PERCY H. CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65177. Promulgated January 17, 1935.

*Henry A. McCarthy, Esq.,* for the petitioner.
*Dean P. Kimball, Esq.,* and *R. N. McMillan, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $2,355.91 in the petitioner's income tax for 1929. The errors assigned are:

1. The inclusion in the petitioner's gross income of the income of four irrevocable trusts established by the petitioner for four of his children who were minors.

2. The inclusion in the petitioner's gross income of $15,029.74 as a dividend from a corporation of which he was the sole stockholder.

The facts have been stipulated.

The petitioner is an individual, residing in Pennsylvania. On December 30, 1924, he executed a deed of trust creating irrevocable trusts for each of his eight children. The Willoughby Co., a corporation of Delaware, was named trustee and acted as such at all times material hereto. The petitioner was the sole stockholder of that corporation. The petitioner, in the trust instrument, transferred certain shares of stock to the trustee to be held in eight separate and equal trusts for his eight children by his wife, Elizabeth R., which children were named in the trust instrument. The stock was transferred to the Willoughby Co. without any designation as trustee, and that company was given the power to sell the securities and to reinvest the principal without restriction, provided that the estate of each child should at all times be invested in the same securities as the estate of all of the others with certain exceptions not here material. Paragraph 3 of the agreement is as follows:

The income of each of said trusts shall be expended as it accrues for the maintenance, education and support of the beneficiary of such trust. Expenditures for tuition, clothing, taxes, board, lodging, traveling, entertainment and recreation shall be proper, and the written approval of any expenditure by Percy H. Clark or Elizabeth R. Clark, or either of them, shall be conclusive evidence that such expenditure is included among the purposes above specified. It is intended that the income of the trusts shall not be allowed to accumulate, and any income of any child not expended in any year shall be available for expenditure for the maintenance, education and support of such child in future years.

Each child was to have an allowance out of his or her share of the income of $40 a month beginning at the age of 16; $75 a month beginning at the age of 18; and $100 a month beginning at the age of 20 years. The principal of each son's trust was to be paid to him when he attained the age of 25 years. The principal of each daughter's trust was to be held during her life, but the full income of the trust was to be paid to her after she attained the age of 25 years. The trust instrument also provided for the disposition of the corpus of each trust in case a son died before reaching the age of 25 years or a daughter died at any time. In general, the principal was to go to the persons designated by the son or daughter or to their heirs. In case any child died unmarried and without issue while the trust was still in effect, the corpus of that trust was to be divided equally among the trusts for the surviving children. There was also provision for successor trustees to cover all eventualities.

Four of the children were minors at the close of the year 1929. The income from each trust for the minors during 1929 amounted to $799.61, or $3,198.44 for all four. The Commissioner included this income in the petitioner's income for 1929.

The Commissioner contends that, because the petitioner was personally liable for the expenses of maintaining, educating, and sup-

porting his minor children, the income of the trusts was in truth used for his benefit, he was the real beneficiary of the trusts, and, therefore, under section 162 (b)[1] of the Revenue Act of 1928, the income of these four trusts should be included in computing his net income. The facts do not bring the case within the provisions of section 167. The word "beneficiary" as used in Supplement E must be accorded its usual meaning. That meaning is the meaning usually intended when the word is used in connection with trusts. The word refers to the four children, not to their father. The income is not taxable to the father. This is in accordance with the Commissioner's rulings and regulations (C. B. 3, p. 116), and the decisions of the Board and the courts. *Irene O'D. Ferrer*, 20 B. T. A. 811; *Lilian K. Blake*, 23 B. T. A. 554; *S. A. Lynch*, 23 B. T. A. 435; *Franklin Miller Handly*, 30 B. T. A. 1271; *Theodore P. Grosvenor*, 31 B. T. A. 574; *John H. Stevens*, 24 B. T. A. 52. Cf. *Emil Frank*, 27 B. T. A. 1158; *Edson* v. *Lucas*, 40 Fed. (2d) 398.

The petitioner, on October 8, 1929, wrote to the Willoughby Co. as follows:

The Willoughby Company holds in its No. 1 Account, as part of the assets which it owns individually, fourteen hundred (1,400) shares of the common stock of the Portland Electric Power Company. I, as the owner of all of the stock of the Willoughby Company, request that Company to donate the said stock of the Portland Electric Power Company to my Children's Trust, to be held in Willoughby No. 2 Account and to be administered as part of the assets held under the aforesaid Deed of Trust.

The directors of the Willoughby Co. met on October 8, 1929, and directed the transfer as requested. They took no other action with respect to this transfer. The stock so transferred was then of the value of $108,869.18. The earnings and profits of the Willoughby Co. accumulated after February 28, 1913, amounted to $15,029.74 on October 8, 1929. The Commissioner included $15,029.74 in the petitioner's income for 1929 as a dividend from the Willoughby Co.

The petitioner controlled the Willoughby Co. It acted solely to accommodate him in making the transfer. He enjoyed the use of the property by having it transferred for his own purposes. This was the use he wanted to make of the property. He would have enjoyed it no more had it been distributed to him directly. The surplus of the corporation was wiped out. For income tax purposes the transaction amounted to the distribution of a taxable dividend,

---

[1](b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

to the extent of the earnings mentioned. Sec. 115 (a), (b); *Security First National Bank of Los Angeles et al., Executors*, 28 B. T. A. 289, 310, 311. Cf. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISSENT ①

ADAMS, dissenting: Petitioner is a citizen of the State of Pennsylvania. Under the laws of that state the father is legally liable for the maintenance, education, and support of his minor children.

The facts show that in the year 1929, four of the petitioner's children were minors for whose education he was legally liable. Petitioner on December 30, 1924, executed irrevocable trusts by the terms of which the trustee was directed to expend for the maintenance, education, and support of these minors the income of the trusts. These expenditures were to include tuition, clothing, taxes, board, lodging, traveling, entertainment, and recreation. The written statement of the petitioner or his wife was to be conclusive evidence that such expenditure was made for the purposes specified. The trust instruments further provided that, at certain times after the minority of the children, the income from as well as the principal of the trusts was to belong unrestrictedly to the children. The grantor, through the trust instruments, controls absolutely the disposition of the income of these trusts during the minority of the children who were the nominal beneficiaries. Petitioner Clark was the grantor of the trusts. The trustee, the Willoughby Co., was a corporation of which petitioner was the sole owner and which necessarily was under his absolute control.

The question which we have to decide is, Who were the real beneficiaries in these trusts? The majority of the Board concludes the children themselves were the real beneficiaries. I think otherwise. I think that petitioner, grantor of the trusts, is the real beneficiary. If we look to substance rather than form, certainly this is true. The law deals with realities and not with fictions. I think we are too often influenced by the name given to a transaction rather than by its nature. Because a given instrument is called a trust, such designation does not necessarily make it so. Because a given person is called a beneficiary, that does not necessarily make him so.

What petitioner actually did was to set aside a certain portion of his property, the income from which was to be applied to the payment of an obligation which petitioner was legally compelled to perform. Looking to the economic result of the transaction from the standpoint of income, petitioner was no poorer by transferring the

income of these properties from himself as an individual to himself as trustee, with the direction to the trustee to expend such income in the payment of his legal obligation, than he would have been had he not made such transfer. From an income standpoint, the children were no richer during their minority by receiving from their father or his solely owned corporation this income than they would have been had they received it directly from their father as their father and not as trustee. Their income estate during their minority was not increased by the expenditure of this income for their mainte-nance, education, and support. Petitioner retained the benefit during the minority of these children of the income received by the trusts and expended by the trusts for the purposes which he directed in the trust instruments.

The trust at most was a mere instrumentality through which Clark paid his legal obligation already existing. I think he was the real beneficiary and that to hold otherwise opens the door wide for the " facile evasion " of the law.

Had the trust instruments merely placed this property in trust for the benefit of petitioner's children without any directions as to its use or expenditure, then we would have a different situation. When petitioner specifically directs the income shall be used for a certain purpose, that purpose being one which was his legal as well as his moral obligation, then I think he becomes the true and real beneficiary.

The Revenue Act of 1928 provides for the taxation of the net income of every individual. Net income is defined to mean gross income computed under the act less the deductions allowed therein. The act permits certain deductions which are set out and, on the other hand, specifically forbids the deductions of certain items, among those being " personal, living or family expenses." The act allows certain exemptions from tax, among the number being a personal exemption in the case of the head of a family or married person living with husband or wife, of $3,500. It allows a credit of $400 for each person (other than husband or wife) dependent upon and receiving chief support from the taxpayer if such dependent person is under 18 years of age or incapable of self-support because mentally or physically defective. This provision of the law petitioner evidently had the advantage of.

The Revenue Act of 1928 provides:

SUPPLEMENT E—ESTATES AND TRUSTS

SEC. 161. IMPOSITION OF TAX.

(a) *Application of tax.*—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

*     *     *     *     *     *     *

(2) Income which is to be *distributed currently by the fiduciary to the beneficiaries* * * *. [Emphasis supplied.]

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*        \*        \*        \*        \*        \*        \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries * * *.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor * * * such part of the income of the trust shall be included in computing the net income of the grantor.

The provisions of the revenue act should be construed together. It was evidently the purpose of Congress to allow to the heads of families responsible for the education, maintenance, and support of their minor children a deduction from their income in the sum of $400 per annum for each minor child and that such deduction should constitute the entire allowance to the taxpayer for such purpose. The act went further and specifically forbade a taxpayer to deduct personal, living, and family expenses. Such expenses necessarily include the support, education, and maintenance of minor children.

The prevailing opinion is based on the proposition that under section 162(b), *supra*, the income of the trust for the taxable year was distributed by the fiduciary to the nominal beneficiaries. I think that this is erroneous. I think it was distributed to the grantor, Clark, for his immediate benefit and that the income so distributed was applied by him to the payment of his legal obligations. If this be true, then under section 167, *supra*, the income from such trusts would be properly taxable to Clark, the grantor of the trust, the petitioner here.

I shall not undertake to reconcile the conflicting opinions of the Board of Tax Appeals on this question, for that would be an attempt to reconcile the irreconcilable. I shall content myself with a reference to the holdings of the Supreme Court of the United States in *Burnet* v. *Wells*, 289 U. S. 670, and *Reinecke* v. *Smith*, 289 U. S. 172, and with the opinion of the United States Circuit Court of Appeals for the Eighth Circuit in the case of *Willcuts* v. *Douglas*, 73 Fed. (2d) 130.

In the opinion in *Willcuts* v. *Douglas, supra,* it was said:

> The main and serious contention of the Commissioner is that the creator of this trust is taxable for the income therefrom because that income is "used to pay a legal and adjudicated obligation which he owed, and in so doing conferred the benefit upon him." The argument is that the trust was created to provide an income in lieu of alimony or other interest in his estate and was, by the court granting the divorce specifically decreed in lieu thereof. Therefore, it is said to follow that since this trust was created to meet a personal and legal obligation he was bound to fulfill and since the income therefrom was devoted to that purpose, it was so used for his benefit as to constitute it his income.
>
> In efforts to avoid income or estate taxes various devices have come to the courts. *From decisions thereon has evolved the general rule that where the creator receives "the substance of enjoyment"* (*Burnet* v. *Wells*, 289 U. S. 670, 677) *of the income it is regarded as his for taxation purposes.* [Emphasis supplied.] Instances where such enjoyment has been held to exist are contracts for assignments of income (*Lucas* v. *Earl*, 281 U. S. 111), assignments of future income (*Burnet* v. *Leininger*, 285 U. S. 136), contracts for payment of obligations of the taxpayer by another (*Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine R. Co.*, 279 U. S. 732) and payment of premiums of insurance on the life of the taxpayer from income of a trust created by him which was revocable (*DuPont* v. *Commissioner*, 289 U. S. 685) or irrevocable (*Burnet* v. *Wells*, 289 U. S. 670).
>
> Among the devices employed to avoid income and estate taxes none has been more used than trusts dealing with members of a family and the courts have been alert to prevent such avoidance by this means. The question here is whether this trust is of that character—irrespective of whether tax avoidance was an impelling motive or was not. In determining this it is the effect upon rather than the motive of the creator in forming the trust. In the majority opinion in *Burnet* v. *Wells*, 289 U. S. 670, the validity of a statutory requirement (Section 219 (h) Revenue Acts of 1924 and 1926) that insurance premiums on the life of the creator paid from the trust were taxable to him as income was upheld because there was recognized a benefit to the creator there from the performance of a pressing social duty and a usual manner of providing for dependents (p. 681). The dissent was grounded on the view that the benefit to the creator must be "something more tangible than a purpose to perform a social duty, or the recognition of a moral claim as distinguished from a legal obligation" (p. 683); and that "the distinction to be observed is between the devotion of income to payments which the settlor is bound to make, and those which he is free to make or not make, as he may see fit." (p. 684).
>
> The contention here by the Commissioner is that the income of this trust was employed to meet a legal obligation which appellee was bound to make. Whether this was the character of this trust is the determining problem. * * *

The court concludes:

> The payment of alimony in this form was a legal obligation which appellee was bound to meet. This took the form of "income". It was taxable as income. It was taxable (under either opinion in *Burnet* v. *Wells, supra*) to appellee because it directly benefited him by discharging a legal obligation he was bound to perform.

I am unable to distinguish the reasoning and conclusion in that case from the situation which we have before us.

Looking to the case of *Burnet* v. *Wells, supra*, in the majority opinion it is said:

Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. * * * Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. *Corliss* v. *Bowers*, 281 U. S. 378; *Reinecke* v. *Smith, supra*. Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. *Nashville, Chattanooga & St. Louis Ry. Co.* v. *Wallace*, 288 U. S. 249; 268, 53 S. Ct. 345, 77 L. Ed.—; *Bromley* v. *McCaughn*, 280 U. S. 124, 136, 50 S. Ct. 46, 74 L. Ed. 226. Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis. A margin must be allowed for the play of legislative judgment. To overcome this statute the taxpayer must show that in attributing to him the ownership of the income of the trusts, or something fairly to be dealt with as equivalent to ownership, the law-makers have done a wholly arbitrary thing, have found equivalence where there was none nor anything approaching it, and laid a burden unrelated to privilege or benefit. *Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S. 192, 204, 33 S. Ct. 44, 57 L. Ed. 184; *Hebe Co.* v. *Shaw*, 248 U. S. 297, 303, 39 S. Ct. 125, 63 L. Ed. 255; *Milliken* v. *United States, supra*. The statute, as we view it, is not subject to that reproach.

     *       *       *       *       *       *       *

Trusts for the preservation of policies of insurance involve a *continuing exercise by the settlor of a power to direct the application of the income along predetermined channels. In this they are to be distinguished from trusts where the income of a fund, though payable to wife, or kin, may be expended by the beneficiaries without restraint, may be given away or squandered, the founder of the trust doing nothing to impose his will upon the use.* * * * Here the use to be made of the income of the trust was subject, from first to last, to the will of the grantor announced at the beginning. A particular expense, which for millions of men and women has become a fixed charge, as it doubtless was for Wells, an expense which would have to be continued if he was to preserve a contract right, was to be met in a particular way. *He might have created a blanket trust for the payment of all the items of his own and the family budget, classifying the proposed expenses by adequate description.* If the transaction had taken such a form, one can hardly doubt the validity of a legislative declaration that income so applied should be deemed to be devoted to his use. Instead of shaping the transaction thus, he picked out of the total budget an item or class of items, the cost of continuing his contracts of insurance, and created a source of income to preserve them against lapse.

Comparing the case before us with the situation in the *Wells* case, the language of the Supreme Court applies with equal force here as there. Clark might have created a blanket trust for the payment of items of his family budget, classifying the proposed expenses by adequate description, and, if the transaction had taken such a form, I cannot doubt that the income from the trust so applied would

have been taxable to him. If such a result would have followed under those conditions, it necessarily follows here.

An examination of the dissenting opinion in the case of *Burnet* v. *Wells, supra,* leads me to the belief it is equally as strong in the support of my position as is the majority opinion. There, we find this language: "Obviously as it seems to us, *the distinction to be observed is between the devotion of income to payments which the settlor is bound to make, and to those which he is free to make or not make, as he may see fit. In the former case the payments have the substantial elements of income to the settlor.*" [Emphasis supplied.]

It seems that there was no difference of opinion in the Supreme Court as to what would have been the legal result if the settlor had directed that the income of the trust should be devoted to a payment which he was bound legally to make.

If the petitioner here can so readily evade the payment of income taxes by setting up a trust to pay the obligation which he personally is legally bound to pay in any event, then we have indeed opened wide the door for that "facile evasion" of which the Supreme Court spoke. If this trust, of which Clark was the grantor, the trustee, and the beneficiary, separates from his personal income the items here involved, then there is nothing to hinder him or any other taxpayer from setting up a trust the income from which shall be devoted to the payment of his personal debts, purchase of clothing for himself and family, to all the things which go to make up household, living, and family expense; and thereby do by indirection that which the law forbids. If this can be done, then the provision of the statute which denies a deduction of these items to the taxpayer has been rendered nugatory and entirely without effect. That such a result can follow the creation of a trust of this character, I do not believe.

In the case before us the trust instruments created two situations. We are dealing here with a provision of the trust instruments which were in effect during the year 1929. At that time, as shown, the nominal beneficiaries of the trusts here involved were admittedly minors for whose support, education, and maintenance petitioner was legally liable. What the situation would be when they attained their majority can have no effect on the situation here. The respondent seems to have recognized that as to those trusts where the nominal beneficiaries had reached their majorities the income from them was not taxable to the grantor for the very obvious reason that when the children reached their majorities the legal obligation of the petitioner to support, educate, and maintain them had ceased. The income from such trusts had at that time become absolutely theirs and went out of the control of the grantor. At such time the income

from the trusts was no longer devoted to payments which the grantor was bound to make.

Believing that the income of these trusts directly benefited the petitioner by discharging a legal obligation which he was bound to perform, I think that he was properly taxable individually with such income. I believe the determination of the respondent should be approved.

Entertaining these views and believing that the prevailing opinion is erroneous, I respectfully dissent.

SMITH and SEAWELL agree with this dissent.

---

TURNER, dissenting: In my opinion the facts in this case clearly bring it within the provisions of section 167 of the Revenue Act of 1928. That section provides in substance that where " any part of the income of a trust *may*, in the discretion of the grantor * * * *be distributed to the grantor* * * * such part of the income of the trust shall be included in computing the net income of the grantor." [Italics supplied.] Here we are concerned only with the income for the benefit of minor children. The trust does not specifically name the person or persons who are to receive and spend the income for the minor children except as to the fixed monthly allowances made to them after they became 16 years of age, but the clear and, to my mind, the only reasonable inference is that it is within the discretion of the grantor to receive and use this income as he pleases. Specific provision is made that the judgment of the grantor or his wife that the income was spent for the purposes of the trust is conclusive and may not be questioned. It seems to me that the income here in question is taxable to the petitioner whether we hold that his moral duty to feed, clothe, educate, and maintain his minor children furnishes basis therefor or not. Reading the terms of the trusts I cannot avoid the conclusion that the income " may, in the discretion " of this grantor be distributed to him and, if so, the statute provides that it shall be included in his income.

For the reasons stated I respectfully dissent.

---

VAN FOSSAN, dissenting: I can not assent to the theory that is basic in this and similar cases where a taxpayer attempts, by whatever device, to do by indirection that which the law forbids if done directly. The prevailing opinion puts the stamp of approval on a scheme that is clearly violative of the intent of Congress. Moreover, it is contrary to the well considered reasoning of the courts. See *Burnet* v. *Wells*, 289 U. S. 670; *Willcuts* v. *Douglas*, 73 Fed. (2d) 130.