### UNITED STATES ex rel. KELLOGG et al. v. LEHIGH VAL. R. CO.

#### (District Court, W. D. New York. April 2, 1902.)

CARRIERS—INTERSTATE COMMERCE ACT—SHIPMENTS BETWEEN POINTS IN SAME STATE.

A shipment of grain over a single railroad between two points, both within the same state, is not an interstate shipment, so as to bring it within the terms of the interstate commerce act, and authorize a federal court to compel such shipment, by mandamus, at the same rates charged other shippers of a like commodity, because the line of road between the two terminal points passes through other states; nor is it rendered an interstate shipment by the fact that the grain was received at the initial point from a carrier by which it was transported from a point in another state, and was there stored in an elevator for further shipment, where it was not taken by the first carrier under a through bill of lading.[1]

Petition for writ of mandamus, under the interstate commerce act, on relation of Spencer Kellogg and another. On demurrer to petition.

George L. Lewis, for petitioners.

Bissell, Carey & Cooke (Martin Carey and James McC. Mitchell, of counsel), for respondent.

HAZEL, District Judge. It appears by the pleadings that the relators desired to ship 50,000 bushels of corn from Buffalo, N. Y., to New York City, over the railroad of the respondent, a Pennsylvania corporation operating its railroad through the states of New York, Pennsylvania, and New Jersey. The corn was purchased by the re-

[1] See Carriers, vol. 9, Cent. Dig. § 63.

lators in Chicago, Ill., and conveyed from there to Buffalo, N. Y., by lake vessels. It does not clearly appear when the grain was shipped to Buffalo. On its arrival at Buffalo, it was elevated at the Kellogg Elevator, of which the relators are the owners, and remained elevated until the relators desired to reship the same to New York City for foreign delivery. There is no allegation of a through bill of lading from the initial point of shipment. The petition shows that the relators were required and compelled by the respondent railroad company, about August 1, 1900, to pay for the reshipment of such grain from Buffalo, N. Y., to the city of New York, one-half cent per bushel more than was charged to other shippers of like grain, who sent their grain through other elevators located at Buffalo, and with which respondent had an agreement by which all elevated grain would be reshipped by it and delivered to the consignee at a specified price per bushel. Other averments in the petition show shipment at various times during the lake season of 1900, from other points in various states bordering on the lakes, to Buffalo, N. Y. The initial consignment in each instance was to the relators, and the grain, on its arrival at Buffalo, was transferred from the ship to the Kellogg Elevator, where it remained until a sale thereof was perfected. Thereupon a demand for cars and rates of shipment per bushel to New York City was made on the respondent, who exacted a greater rate for conveying the grain to New York City than it exacted or required other shippers to pay.

This proceeding is laid in the district court, and any relief granted must be obtained under the provisions of the interstate commerce act. Those provisions are claimed by the relators to have been violated by respondent in its refusal to move interstate traffic at the same rates as are charged, or upon terms and conditions as favorable as those given by respondent for like traffic, under similar conditions, to any other shipper, and therefore this court has jurisdiction to issue a writ of mandamus against the defendant common carrier, commanding it to move and transport the traffic to New York City as required by the relators. It has been held that transportation by railroad from one point within a state to another point within it, but passing during the transportation without the state, and through part of another state, is not an interstate shipment, and does not constitute interstate commerce. Lehigh Val. R. Co. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672. In the case cited, it was held that a state tax imposed upon the Lehigh Valley Railroad Company by the state of Pennsylvania, under whose laws it was incorporated, on account of the transportation of merchandise by it within the state, but passing during the transportation without the state, and through part of another state, was not a tax upon interstate commerce, and not in infringement of the provisions of the constitution of the United States. It would seem, therefore, to be clear that a shipment between Buffalo and New York, where the merchandise, while in transitu, passes without the state, and through part of another state, is not a violation of the interstate commerce act. Although shipment between two points within a single state has been held to constitute interstate commerce, yet such shipment is required to be part of a continuous carriage be-

tween points in different states. The language of the interstate commerce act expressly states that its provisions shall apply to "common carriers or carriers engaged in the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used, under a common control, management or arrangement, for a continuous carriage or shipment, from one state or territory * * * to any other state or territory of the United States."

I do not think that the shipment of the grain specified in the petition was a continuous carriage thereof between points in different states. Here the shipment sought to be enforced is one from Buffalo to New York. U. S. v. Chicago, K. & S. Ry. Co. (C. C.) 81 Fed. 783; Ex parte Koehler (C. C.) 30 Fed. 867; 17 Am. & Eng. Enc. Law, 128, 129, and cases cited; Pennsylvania Millers' State Ass'n v. Philadelphia & R. Ry. Co., 8 Interst. Com. R. 531; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047. The facts do not justify the court in issuing the extraordinary remedy sought, for the reasons above set out. It is therefore unnecessary to discuss any of the further points raised on the argument.

The demurrer is sustained, and the writ dismissed, with costs.